## Docket No. 14-56834

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

JORDAN MARKS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED
PLAINTIFF-APPELLANT,

v.

CRUNCH SAN DIEGO, LLC,
DEFENDANT-APPELLEE.

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

DISTRICT COURT CASE NO.: 3:14-CV-00348-BAS-BLM

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

[Other Attorneys of Record Listed on Signature Page]

Attorneys for Plaintiff-Appellant

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

I. THE CONCLUSORY TESTIMONY BY WAIS ASEFI IS INSUFFICIENT TO FIND IN FAVOR OF CRUNCH ON SUMMARY JUDGMENT ............. 1

II. CRUNCH MAKES INCORRECT FACTUAL STATEMENTS REGARDING THE TEXT MESSAGING SYSTEM ...................................... 2

III. CRUNCH HAS FORFEITED THE RIGHT TO OBJECT ON HEARSAY GROUNDS ....................................................................................... 4

IV. MR. HANSEN'S EXPERT TESTIMONY SHOULD HAVE BEEN CONSIDERED BY THE DISTRICT COURT ................................................ 4

    A. Crunch Has Forfeited Any Right To Argue The Motion To Exclude On Appeal Because Crunch Did Not File Its Own Appeal Of The Decision.. ........................................................................................ 5

    B. Mr. Hansen Did Not Give Legal Opinions, And Only ¶¶ 7 And 12 Of Mr. Hansen's Declaration Were Specifically Challenged By Crunch..... 6

V. THE TEXTMUNICATION SYSTEM IS AN ATDS; OR IN THE ALTERNATIVE, A JURY SHOULD DECIDE THE ATDS ISSUE .............. 8

    A. *Satterfield* Does Not Stand For Crunch's Proposition That Courts May Not Apply FCC Rulings Concerning § 227(a)(1) ................................... 8

    B. Under the Hobbs Act, The District Court Was Not Free To Refuse To Apply Pertinent FCC Rulings ................................................................ 9

    C. The CFR Does Not Support Crunch's Position .................................... 12

    D. The Underlying Rationale For Finding A Predictive Dialer Is An ATDS Applies To The Textmunication System .................................... 13

    E. The Textmunication System Is At Least Similar To Internet-to-Phone Text Messaging Systems Found To Be An ATDS By The FCC .......... 16

    F. Number Generation, Or The Capacity For Number Generation, Is Not A Prerequisite For An ATDS ................................................................ 17

i

1. *The FCC's 2015 ruling did not state that number generation is required* ........................................................................ 17
2. *If number generation, or the capacity for number generation was a prerequisite, the FCC would not have implemented a case-by-case analysis of human intervention* ........................................................ 18
3. *Number storage is different from number generation* ...................... 19

G. Some Degree Of Human Intervention Is Always Required, Even For Predictive Dialers And Internet-to-Phone Messaging Systems ............. 20

VI. CRUNCH'S CASES ARE DISTINGUISHABLE ......................................... 24

VII. THE TEXTMUNICATION SYSTEM HAS AT LEAST THE POTENTIAL CAPACITY TO GENERATE AND DIAL RANDOM OR SEQUENTIAL NUMBERS ...................................................................................... 26

VIII. CRUNCH'S DISCUSSION OF CONSENT IS IRRELEVANT ................... 29

IX. CONCLUSION ............................................................................... 30


CERTIFICATE OF COMPLIANCE .................................................................(I)

___

**APPELLANT'S SUPPLEMENTAL EXCERPTS OF RECORD**

Volume 1 ................................................................. A.S.E.R. 001-061

## TABLE OF AUTHORITIES
## CASES

*Anderson v. Liberty Lobby, Inc.*,

    477 U.S. 242 (U.S. 1986) .................................................................. 29

*CE Design, Ltd. v. Prism Bus. Media, Inc.*,

    606 F.3d 443 (7th Cir. Ill. 2010) ...................................................... 11

*Conservation Northwest v. Shermank*,

    715 F.3d 1181 (9th Cir. 2013) ............................................................ 4

*Dominguez v. Yahoo, Inc.*,

    2015 U.S. App. LEXIS 18460 (3d Cir. Pa. Oct. 23, 2015) ........................ 1-2, 25

*Fils v. City of Aventura*,

    647 F.3d 1272 (11th Cir. 2011). ...................................................... 10

*ITT World Commc'ns, Inc.*,

    466 U.S. 463 (1984) ........................................................................ 11

*Johnson v. Yahoo!, Inc.*,

    2014 U.S. Dist. LEXIS 171325 (N.D. Ill. Dec. 11, 2014) ...................... 20, 24

*Keim v. ADF Midatlantic, LLC*,

    2015 U.S. Dist. LEXIS 159070 (S.D. Fla. Nov. 9, 2015) ...................... passim

*Lee v. loanDepot.com, LLC*,

    2015 U.S. Dist. LEXIS 112350 (D. Kan. Aug. 25, 2015) ........................... 9

*Luna v. Shac*,

    2015 U.S. Dist. LEXIS 109841 (N.D. Cal. Aug. 19, 2015) ...................... 10

*Mais v. Gulf Coast Collection Bureau, Inc.*,

    2014 U.S. App. LEXIS 18554 (11th Cir. Fla. Sept. 29, 2014) .................. 10

*Marks v. Crunch San Diego, LLC*,

    55 F. Supp. 3d 1290 (S.D. Cal. 2014) .......................................... 4, 10

*McGowan v. Credit Mgmt. LP*,

    2015 U.S. Dist. LEXIS 129610 (D. Nev. Sept. 24, 2015) .......................... 11, 23

*Meyer v. Portfolio Recovery Assocs., LLC*,

    707 F.3d 1036 (9th Cir. Cal. 2012) ......................................................... 8, 13, 25

*Pacific Bell v. Pac West Telecomm*,

    325 F.3d 1114, 1125 (9th Cir. 2003) . ............................................................... 10

*Satterfield v. Simon & Schuster, Inc.,*

    569 F.3d 946 (9th Cir. 2009) ....................................................8-9, 15, 19-20, 23

*Sherman v. Yahoo! Inc.,*

    997 F. Supp. 2d 1129 (S.D. Cal. 2014) ..................................................... 24, 28

*Sherman v. Yahoo! Inc.*,

    2015 U.S. Dist. LEXIS 167177 (S.D. Cal. Dec. 14, 2015) ...... 10, 16, 20, 23, 24

*Sterk v. Path, Inc.*,

    46 F. Supp. 3d 813, 817 (N.D. Ill. 2014) ........................................................... 6

*Stewart v. T-Mobile USA, Inc.*,

    2015 U.S. Dist. LEXIS 114276 (D.S.C. Aug. 28, 2015) .................................. 17

*United States v. Monus*,

    128 F.3d 376, 386 (6th Cir. 1997) ..................................................................... 6

*US West Communs., Inc. v. Jennings*,

    304 F.3d 950 (9th Cir. 2002) ........................................................................... 11

*Wilcox v. Green Tree Servicing, LLC*,

    2015 U.S. Dist. LEXIS 58667 (M.D. Fla. May 5, 2015) .................................. 15

## STATUTES

28 U.S.C. § 2342 ...................................................................................... 9-10

47 CFR 64.1200 ....................................................................................... 12, 13

iv

47 U.S.C. § 227(a)(1) ........................................................... passim

47 U.S.C. § 227(b)(1)(A) .......................................................... 12

## OTHER

H.R. Rep. 102-317 (1991) ....................................................... 9

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*
18 FCC Rcd 14014 (2003) ...................................................... 14, 21

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*
19 FCC Rcd 15934 (2004) ........................................................ 12

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*
23 FCC Rcd 559 (2008) ...................................................... passim

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*
27 FCC Rcd 1830 (F.C.C. 2012) ................................................ 29

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,*
2015 FCC LEXIS 1586 (July 10, 2015) .................................... passim

Crunch is incorrect that the Textmunication system is not an ATDS. Crunch's repeated and circular arguments do not support affirming summary judgment. The system can be used to send marketing text messages *en masse* to consumers, and at least three marketing text messages were sent to Mr. Marks ("Marks") without his consent. Textmunication's website says that the system case be used to "[s]end mass texts promoting an event". E.R. 193.

The Textmunication system and other web-based messaging systems are growing in popularity (E.R. 186-191; RJN, Appellate Dkt. No. 18-2), and such systems should be covered by the TCPA's reach. Companies like Crunch should not be permitted to employ such web-based systems to bypass the TCPA's consent requirements, especially in the *marketing* context where the FCC has found heightened protection is needed. *See* 47 CFR 64.1200(a)(7)(ii).

## I. THE CONCLUSORY TESTIMONY BY WAIS ASEFI IS INSUFFICIENT TO FIND IN FAVOR OF CRUNCH ON SUMMARY JUDGMENT

Crunch, through its CEO, Wais Asefi, testified in a conclusory manner that the platform was not an ATDS, saying "Textmunication's platform does not have the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to call those numbers" (E.R. 044, ¶ 6), similar to the TCPA defendant in *Dominguez*. "[T]his restating of the statutory definition amount[s] to nothing more than a legal conclusion couched as a factual

1

assertion..." *Dominguez v. Yahoo, Inc*., 2015 U.S. App. LEXIS 18460, *8 (3d Cir. Pa. Oct. 23, 2015). The conclusory statement is insufficient for the District Court to have granted summary judgment in favor of Crunch, especially when considering contrary expert testimony (E.R. 195-204).

## II. CRUNCH MAKES INCORRECT FACTUAL STATEMENTS REGARDING THE TEXT MESSAGING SYSTEM

Crunch makes incorrect statements of fact in its Answering Brief. For example, on page 5, Crunch states matter-of-factly that cell phone numbers can only be 'manually entered" (on page 6 Crunch says the "system is designed to only record numbers manually entered by a user or consumer"), yet this is contradicted on page 5 when Crunch recognizes that someone can "upload telephone number<u>s</u>" (emphasis added). Crunch admits that numbers may be "inputted into the platform" (such as from a list). E.R. 043, ¶ 5; E.R. 117, 2-9; E.R. 119, 1-2l E.R. 120, 11-15; E.R. 199, ¶¶ 9 and 11. Crunch spins the statement "manually uploads telephone numbers onto the platform" to mean that each telephone number is entered one by one, but that does not have to be the case. *See* E.R. 044, 2. First, what matters is the equipment's *capacity*, not how it is used. Second, Mr. Hansen (one of the leading technology experts regarding ATDS technology, E.R. 196-197; SER 108-110, 115, 119; A.S.E.R.[1] 5-11; 14-22[2]) testified "the Textmunication system 'does have the

---

[1] "A.S.E.R" refers to Appellant's Supplemental Excerpts.

capacity <u>to allow the importing of a list into a database</u> in addition to creating a list of numbers to call through calls to action.'" E.R. 071, 18-20 (emphasis added). Clients can import lists themselves. E.R. 199, ¶ 9; *see also* E.R. 111:23-112:1.

Crunch states incorrectly that the system "is not capable of, sorting numbers, creating messages, and sending them without human intervention." Answering Brief, p. 8. There is evidence in the record, however, that the system can send an automated birthday message, which shows that the system is in fact capable of storing numbers, creating a birthday message, and sending the birthday message without human intervention. *See* E.R. 192 ("Remind clients about appointments, anniversaries, b-days, oil changes, tune ups, and more via text"); *see also* E.R. 104, 9-13. Further, there evidence that the system can send an automated reply text message. *See* E.R. 182 (mentioning the "auto response message"); *see also* A.S.E.R 030. Various platform features are listed in E.R. 181, such as "Text To Join/Alerts," "Text To Win/Contests," and "Text for Info." Textmunication offers "Apt reminders" and the ability to obtain an "8 day pass" by texting a certain code. E.R. 183. The system can also be used to "schedule holiday campaigns ahead of time..." E.R. 194.

---

[2] *See also* Exhibit D to Appellant's Motion to Seal mailed to the Court on January 8, 2016.

## III. CRUNCH HAS FORFEITED THE RIGHT TO OBJECT ON HEARSAY GROUNDS

Marks' Exhibits at E.R. 180 and 182, introduced before the District Court, should be considered by the Court, for they are informative on the issue of the capacities of the Textmunication system. These exhibits were not objected to by Crunch at the District Court level,[3] and therefore Crunch has forfeited the argument on appeal that they are inadmissible hearsay. *See Conservation Northwest v. Shermank*, 715 F.3d 1181, 1188 (9th Cir. 2013).

## IV. MR. HANSEN'S EXPERT TESTIMONY SHOULD HAVE BEEN CONSIDERED BY THE DISTRICT COURT

The District Court denied Crunch's motion to strike Mr. Hansen's expert testimony as *moot*. In granting summary judgment for Crunch, the District Court explained that the expert testimony of Mr. Hansen was not considered and therefore denied the motion to strike as moot. Even the section heading says "Defendant's motion to exclude the opinions and testimony of Jeffrey Hansen is moot." *Marks*, 55 F. Supp. 3d at 1293. Contrary to Crunch's suggestions, Mr. Hansen's expert testimony was not deemed irrelevant or inadmissible, for the motion to exclude was merely denied as moot. The District Court stated expert testimony was not needed in light of the undisputed material facts. *Id.*

---

[3] An *unredacted* MSJ opposition brief is found at A.S.E.R. 039-061.

4

Crunch argues that Mr. Hansen's testimony is purely legal in nature and therefore should not be considered. Such argument, which was denied as moot, is wrong for three reasons. First, Crunch did not appeal the denial of the motion to exclude as moot, and therefore cannot argue on appeal that Mr. Hansen's testimony is legal conclusion that should be rejected. Second, neither all nor some of Mr. Hansen's testimony was legal conclusion. Third, even if a portion of the declaration was legal testimony (*arguendo*), the remaining opinions were not and were not specifically challenged by Crunch.

### A.     Crunch Has Forfeited Any Right To Argue The Motion To Exclude On Appeal Because Crunch Did Not File Its Own Appeal Of The Decision

Crunch did not appeal the order denying as moot Crunch's motion to exclude Mr. Hansen's testimony, and therefore cannot properly attempt to obtain a ruling on that motion on appeal. However, if this Court deems it proper to consider the motion to exclude on appeal, such motion should be denied for the reason explained in Marks' opposition briefing[4] (SER, 013-042; A.S.E.R. 1-022) and as explained below.

---

[4] Crunch argues that Mr. Hansen cannot opine on the system because he did not review the code or inspect the actual system (Answering Brief, p. 10), but such was unnecessary. SER 032-037; A.S.E.R. 015-022. Hansen reviewed deposition testimony from Mr. Asefi and documentation produced in discovery (SER 134:9-19). Mr. Hansen has experience with web-based platforms and all the technology

**B.    Mr. Hansen Did Not Give Legal Opinions, And Only ¶¶ 7 And 12 Of Mr. Hansen's Declaration Were Specifically Challenged By Crunch**

The statements in Mr. Hansen's declaration (E.R.195-204) are not legal opinions. Mr. Hansen relied upon language in pertinent FCC rulings to determine what is required for equipment to be an ATDS. *See e.g. United States v. Monus*, 128 F.3d 376, 386 (6th Cir. 1997). Mr. Hansen looked to such FCC rulings in making the determination of what facts were relevant to the ATDS inquiry. *See Sterk v. Path, Inc*., 46 F. Supp. 3d 813, 817 (N.D. Ill. 2014) ("Path argues that in the portions of the Snyder Report objected to by Path, Snyder offers his opinion as to what he believes the TCPA prohibits, how FCC rulings should be interpreted, and whether certain legal standards have been met in this case. However, Snyder merely discusses the law and facts to give a background and overview for his report."). Here, Mr. Hansen testified that the system "has the capacity to either call numbers stored **or** to call numbers generated by a number generator" (E.R. 203, ¶ 15), "the dialer calls numbers that are stored as a list" (E.R. 198, ¶ 7), a "message is automatically sent to the consumer" (E.R. 199, ¶ 10; *see also* ¶ 11) and "[r]andom or sequential number generators are a method of generating numbers, but they have nothing to do with computer storage" (E.R. 200, ¶ 12).

---

used in this system he knows very well. SER 104:17-20. Mr. Hansen knows how other experts evaluate text messaging systems. SER 139.

It is odd that Crunch relies on Mr. Hansen's testimony in some instances (Answering Brief, p. 22) but in others claims that his testimony should not be considered (*id*. at pp. 10-13). If Mr. Hansen is not permitted to testify as an expert as to whether the system is an ATDS, then the testimony of Mr. Asefi (a non-expert and Textmunication's CEO) should not be considered in determining whether the system is an ATDS. Further, if Crunch believes that Mr. Hansen gave improper legal testimony based on FCC rulings defining an ATDS, then it is likewise improper for Mr. Asefi to give legal testimony that the system does not have the capacities as determined by the express text of the TCPA, for following language in statutory text is no different from following language in FCC rulings. But since Crunch heavily relies upon Mr. Asefi's testimony about the system's capacities, Mr. Hansen's contrary and expert testimony should be considered even more.

Crunch did not specifically challenge the expert opinions by Mr. Hansen in of his declaration apart from ¶¶ 7 and 12 (SER, 043-064), which opinions are relevant to the capacity issue. Thus, Mr. Hansen's relevant and helpful expert testimony should have been considered by the District Court.

//

//

7

## V.    THE TEXTMUNICATION SYSTEM IS AN ATDS; OR IN THE ALTERNATIVE, A JURY SHOULD DECIDE THE ATDS ISSUE

Crunch's main arguments are based on the statutory text of the TCPA, the *Satterfield* decision by this Court, and FCC rulings, which are all without merit.

### A.    *Satterfield* Does Not Stand For Crunch's Proposition That Courts May Not Apply FCC Rulings Concerning § 227(a)(1)

As previously argued by Plaintiff, Plaintiff believes that the *Satterfield* decision did not rule that the entire language of 47 U.S.C. 227(a)(1) was "clear and unambiguous," but rather that the focus on the "capacity" of the equipment was clear and unambiguous. *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 951 (9th Cir. Cal. 2009).  This Court in *Meyer* followed the FCC's 2003 Ruling on predictive dialers, which FCC ruling interpreted § 227(a)(1). This Court never held in *Satterfield* that the FCC may not interpret the TCPA, including § 227(a)(1).

Even if the entire language of § 227(a)(1) were clear and unambiguous (several FCC rulings and varied district court decisions suggest otherwise), there is a distinction between relying upon legislative history and Congressional intent of the TCPA on the one hand, and following the FCC's interpretations of the TCPA on the other, as explained in the Opening Brief. Especially when "[t]he TCPA's text and legislative history reveal Congress's intent to give the Commission broad authority to enforce the protections from unwanted robocalls as new technologies emerge." 2015 FCC LEXIS 1586, *188 (F.C.C. 2015).

8

In any event, following Crunch's own argument regarding the ATDS language being clear and unambiguous, Crunch cannot properly introduce Congressional intent to interpret § 227(a)(1), *see* Answering Brief, n. 15. In *Satterfield*, this Court recognized that the "preeminent canon of statutory interpretation requires us to presume that [the] legislature says in a statute what it means and means in a statute what it says there. Thus, our inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *Satterfield*, 569 F.3d at 951. To the extent this Court here considers Congressional intent, Marks points to language cited by Crunch, that, with autodialers, "each system has the capacity to automatically dial as many as 1,000 phones per day" (H.R. Rep. 102-317, at 10 (1991)), which further supports the FCC's 2003 ruling[5] that systems that engage in automatic dialing *en masse* are an ATDS.

## B. Under The Hobbs Act, The District Court Was Not Free To Refuse To Apply Pertinent FCC Rulings

Congress delegated at least implied authority to interpret § 227(a)(1). The FCC has, without objection from Congress, interpreted § 227(a)(1) in its 2003, 2008 and 2015 Rulings. The FCC's interpretations of the TCPA are controlling unless invalidated by a court of appeals under the Hobbs Act. *See* 28 U.S.C. §

---

[5] "[T]he dialing system need only have the 'capacity' to store or produce telephone numbers, even if only dialing a fixed set of numbers." *Lee v. loanDepot.com, LLC*, 2015 U.S. Dist. LEXIS 112350, *5 (D. Kan. Aug. 25, 2015).

2342; *Pacific Bell v. Pac West Telecomm*, 325 F.3d 1114, 1125 (9th Cir. 2003). Moreover, the District Court inappropriately created the argument for Crunch that the FCC did not have authority to interpret § 227(a)(1) of the TCPA. *See e.g.*, *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011).

Marks' argument that the District Court was bound by the Hobbs Act is not a red herring. Numerous courts have ruled that the FCC's rulings on the TCPA must be followed under the Hobbs Act. Even the *Luna* case cited by Crunch states, "the Hobbs Act jurisdictionally divests district courts from ignoring FCC rulings interpreting the TCPA." *Luna v. Shac*, 2015 U.S. Dist. LEXIS 109841, *7 (N.D. Cal. Aug. 19, 2015). Crunch addresses the cases cited by Marks in a mere (and extremely lengthy) footnote, and incorrectly argues only that they should not be followed because they pre-date the 2015 ruling.

The *Sherman* Court recently reaffirmed Marks' position, stating, "[s]ince the statute's passage in 1991, the FCC has issued regulations expanding the statutory definition of an ATDS, and this Court is bound by those rulings under the Hobbs Act." *Sherman v. Yahoo! Inc.*, 2015 U.S. Dist. LEXIS 167177, *7-8 (S.D. Cal. Dec. 14, 2015). In *Keim*, the court recognized the flaw in the District Court's ruling, noting the *Marks* court held, contrary to the teaching of *Mais*, that it could reject interpretations of the TCPA in FCC orders. *Keim*, at *15.

10

It is disingenuous for Crunch to argue that the District Court did not effectively invalidate the FCC rulings by choosing not to follow them, for that is exactly what the District Court did. The District Court did not even discuss the Hobbs Act in its order. Disagreeing with and not following applicable FCC rulings is effectively the same as invalidating the rulings, which the Hobbs Act does not permit. As stated in the Opening Brief, "deeming agency action valid or ineffective is precisely the sort of review that the Hobbs Act delegates to the courts of appeals in cases challenging final FCC orders." *CE Design, Ltd.*, 606 F.3d at 448.

The District Court was absolutely bound by the FCC's 2003 and 2008 Rulings under the Hobbs Act, even if the District Court strongly disagreed with those rulings, as explained by Marks in detail in the Opening Brief. "Litigants may not evade these provisions by requesting the District Court to enjoin action that is the outcome of the agency's order." *ITT World Commc'ns, Inc.*, 466 U.S. at 468; *US West Communs., Inc. v. Jennings*, 304 F.3d 950, 958 n.2 (9th Cir. 2002).

If the FCC did not have authority to interpret 47 U.S.C. § 227(a)(1), then this Court in *Meyer* would not have followed the FCC's 2003 Ruling that predictive dialers (an example of emerging technologies at that time) are an ATDS. *See McGowan v. Credit Mgmt. LP*, 2015 U.S. Dist. LEXIS 129610, *17 (D. Nev. Sept. 24, 2015). The FCC continues to interpret the TCPA based on changes in technology, including internet-to-phone type systems in its July 2015 Ruling.

Marks' argument under the Hobbs Act is not moot in light of the FCC's 2015 ruling, contrary to Crunch's contention, for such ruling reinforces Marks' position that pertinent FCC rulings must be followed by the District Court.

### C.    The CFR Does Not Support Crunch's Position

Crunch's argument regarding the Code of Federal Regulations ("CFR")[6] is incorrect.  The CFR need not be amended every time there is an interpretive or clarifying ruling from the FCC. For example, the FCC ruled in 2003 that predictive dialers are per se an ATDS, yet the CFR has not been modified to state that predictive dialers are an ATDS. *See* 47 CFR 64.1200(f)(2). As it concerns the affirmative defense of prior express consent, in 2008, the FCC ruled that a specific type of consent was required for debt collection calls, 23 F.C.C. Rcd 559, ¶ 10. However, the CFR was not amended to reflect such definition of consent in the debt collection context. *See* 47 CFR 64.1200(a)(1). The FCC ruled in 2004 that a "text message" was a "call" within the meaning of § 227(b)(1)(A), 19 FCC Rcd. at 15934 (2004), which was also found by this Court in *Satterfield*, yet the CFR was not amended to state that "text messages" are "calls" under § 227(b)(1)(A), *see* 47 CFR 64.1200(a)(1), even though that is certainly the case. Thus, the CFR did not

---

[6] This argument was first raised by Crunch at the MSJ hearing, and was not brief by Crunch at the District Court level.

have to be modified in order for the FCC's 2003 interpretive rulings finding that predictive dialers are an ATDS to be valid.

Crunch is wrong to have stated before the District Court that "the CFR rule tracks exactly the statute" (E.R. 017, 18-19). Looking to how an ATDS is defined in the CFR, the comma after "called" is *omitted* (compare 47 U.S.C. § 227(a)(1) ("the capacity-- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers")), such that the term "automatic telephone dialing system" is:

> equipment which has the capacity <u>to store</u> or <u>produce telephone numbers to be called using a random or sequential number generator</u> and to dial such numbers.

47 CFR 64.1200(f)(2) (emphasis added). Thus, the CFR actually support's Marks' position.

## D. The Underlying Rationale For Finding A Predictive Dialer Is An ATDS Applies To The Textmunication System

Crunch cannot overcome Marks' argument that the underlying rationale for the FCC and the *Meyer* case's determination that predictive dialers are an ATDS applies to the Textmunication system. Plaintiff thoroughly explained in the Opening Brief that while the Textmunication system is not alleged to be a predictive dialer, it, like a predictive dialer, is an ATDS. It is not helpful to Crunch to argue that the system does not send text messages to random or sequential

numbers like a predictive dialer can do, for a predictive dialer can also call a list of numbers (even a list of customer's numbers) and still be an ATDS as a matter of law. *See Keim,* 2015 U.S. Dist. LEXIS 159070 at *22. "Even though the telemarketers programmed the numbers to be called into the equipment using a set list, rather than the equipment randomly or sequentially generating the numbers, the FCC explained that '[t]he basic function of such equipment . . . has not changed—the *capacity* to dial numbers without human intervention.'" *Id.* at *7.

The Textmunication system is akin to commercial dialers that send hundreds of text message automatically with the push of a button. [E.R. 193; *see also* A.S.E.R. 029]. Crunch fails to meaningfully distinguish automated text messages from automated voice calls that can be placed using a predictive dialer. Also, Mr. Hansen testified that some predictive dialers can send text messages. SER 089:23-090:11. The system here can and does dial sequentially by calling each number in the list or database until exhausted, SER 182:12-19; 186:5-7, like a predictive dialer. Further, a random or sequential number generator is not needed for a predictive dialer to be an ATDS. SER 209:18-21.

In its footnote 12, Crunch cites the FCC's 2003 Ruling explaining that predictive dialers "automatically dial consumers' telephone numbers" (18 FCC Rcd. 14014, ¶ 8, n. 31), which numbers were have to be stored in a database. Crunch is unable to differentiate the Textmunication system from a predictive

14

dialer other than to argue that predictive dialing does not take place as it concerns text messages (under *Satterfield*, 569 F.3d at 952, texts are "calls"). While this may be true, the timing aspect of predictive dialers is not what makes them an ATDS, it is the number storage and automatic dialing aspect that brings the equipment under the purview of the TCPA. The system, like a predictive dialer, uses a campaign or a cue and calls that list in a database, and does so without human intervention. SER 092:25-093:4. A predictive dialer has such feature, with only the addition of the predictive algorithm. SER 093:5-19; *see also Wilcox v. Green Tree Servicing, LLC*, 2015 U.S. Dist. LEXIS 58667, *11 (M.D. Fla. May 5, 2015).

Crunch does not dispute that the courts should apply FCC rulings when they are applicable (E.R. 029, 8-9; Answering Brief, p. 30), such as finding a system is an ATDS where it is a predictive dialer (applying the FCC's 2003 and 2008 Ruling). If the courts are to apply the FCC's rulings regarding predictive dialers when a predictive dialer is at issue, then Crunch must admit that the FCC has authority to interpret § 227(a)(1) of the TCPA. In arguing the FCC's 2015 Ruling supports summary judgment in Crunch's favor, Crunch impliedly admits that the FCC has authority to interpret 47 U.S.C. § 227(a)(1).

### E. The Textmunication System Is At Least Similar To Internet-to-Phone Text Messaging Systems Found To Be An ATDS By The FCC

Crunch argues it is a red herring whether the FCC's finding regarding internet-to-phone systems applies to the Textmunination platform. This is incorrect. The court in *Sherman* very recently acknowledged "Internet-to-phone text messaging technology is a type of autodialer under the TCPA." *Sherman*, 2015 U.S. Dist. LEXIS 167177 at *7. Pursuant to this 2015 FCC ruling, Plaintiff believes there is no need for a case-by-case analysis (found to be a jury question in *Sherman*) here as to the human intervention aspect of the web-based text messaging equipment (the Textmunication system). As explained by Revolution Messaging, such "technology necessarily and inherently requires the collection and storage of telephone numbers and has the capacity to dial such numbers by initiating calls to specified cellular phone numbers associated with a domain name." 2015 FCC LEXIS 1586, *182.

Even if the system does not appear to send text messages from an email account or a wireless portal, it is a web-based platform that is at least comparable to what the FCC calls "internet-to-phone" systems. Practically speaking, there is no reason to distinguish for ATDS purposes a web-based system that send emails that are converted to text messages before they are sent to cell phones from web-based systems that send actual text messages straight to cell phones automatically.

16

If the former is an ATDS, then the latter should be an ATDS as well. "[U]nwanted text messages pose the same cost and annoyance to consumers, regardless of whether they originate from a phone or the Internet." 2015 FCC LEXIS 1586, at *191.

**F.    Number Generation, Or The Capacity For Number Generation, Is Not A Prerequisite For An ATDS**

Crunch incorrectly contends that the FCC's 2015 ruling confirmed that a number generator (or the capacity for such) is a required aspect of an ATDS.

### 1.    *The FCC's 2015 ruling did not say that number generation is required*

The sentences in the 2015 ruling apparently relied upon by Crunch for the conclusion that number generation is required (Answering Brief, p. 4) merely to recognize how an ATDS is defined in the statutory text of the TCPA. *See* 2015 FCC LEXIS 1586, *25 and 42. The FCC does not require number generation or the capacity to do so for equipment to be an ATDS. *See e.g.*, *Stewart v. T-Mobile USA, Inc.*, 2015 U.S. Dist. LEXIS 114276, *7 (D.S.C. Aug. 28, 2015) ("An ATDS means equipment that has the capacity both to store telephone numbers and to dial such numbers.").

//

//

17

## 2. *If number generation or the capacity for number generation was a prerequisite, the FCC would not have implemented a case-by-case analysis of human intervention*

Were a number generator *required*, or even its capacity, the FCC would not have implemented a case-by-case analysis regarding the degree of "human intervention" for each dialing system. In placing the focus on the automated dialing aspect without human intervention in the FCC's 2003 ruling, the FCC essentially clarified that number generation was not required (where the equipment can or does store numbers to be called and can or does automatically call those number, such as with predictive dialers).

Stated differently, under Crunch and the District Court's construction, even if the equipment sent automated text messages to stored numbers without any human intervention whatsoever, it would still not be an ATDS without number generation capabilities, but that is not what the FCC said in 2015. "[T]he Commission has also long held that the basic functions of an autodialer are to 'dial numbers without human intervention' and to 'dial thousands of numbers in a short period of time.'" 2015 FCC LEXIS 1586 at *32.[7]  Here, the Textmunication system can send marketing text messages *en masse* to stored telephone numbers in a database in automated fashion, making it an ATDS. Opening Brief, pp. 5-6.

---

[7] The system here can send a text to a thousand numbers stored in the database. E.R. 111 and 119.

### 3. *Number storage is different from number generation*

According to Mr. Hansen, numbers are not stored using a number generator, for they are produced using a number generator. E.R. 200, ¶ 12; SER 078:1-2; 079:14-18). This technical reality (*id*. at 080:14-081:15)) is unchallenged by Crunch. Also, it makes sense to interpret the TCPA as requiring only *number storage and automatic dialing* or *number generation and automatic dialing*, qualified by the "human intervention" analysis.

Crunch is incorrect that equipment is an ATDS "if it stores and dials numbers from a list, <u>but only if</u> the equipment also has the capacity to generate numbers randomly or sequentially." Answering Brief, p. 28 (emphasis added). If the numbers to be called are stored in a <u>list</u>, then it does not make sense for there to be a need to also create random or sequential numbers to be called. Stated differently, if the system can send an automated marketing text message to at least 100 numbers stored in a list, then it is an ATDS regardless of whether the system can also produce numbers not stored in the list. The end goal is the same, to send mass text messages to cell phone numbers automatically.

Crunch's interpretation ignores the factual reality testified to by Mr. Hansen (and Mr. Snyder in *Satterfield*[8]) that numbers are not *stored* using a number

---

[8] Satterfield's expert, Mr. Snyder, opined, "[t]he use of stored numbers, randomly generated numbers or sequentially generated numbers used to automatically

generator but rather *produced* using a number generator, which means it does not make sense to say that both number storage and number generation is required, especially given the disjunctive "or" in § 227(a)(1). "[E]quipment that has the capacity to store or dial random or sequential numbers falls within the TCPA's scope even if that capacity is not used and instead the telemarketer programs the equipment with a set list of numbers to be dialed." *Keim*, 2015 U.S. Dist. LEXIS 159070 at *7. "As the Commission has previously recognized, 'the purpose of the requirement that equipment have the 'capacity to store or produce telephone numbers to be called' is to ensure that the restriction on autodialed calls not be circumvented." 2015 FCC LEXIS 1586, at *34-35.

### G. Some Degree Of Human Intervention Is Always Required, Even For Predictive Dialers And Internet-to-Phone Messaging Systems

Crunch points to evidence that the text messages are sent with some degree of human intervention, but that does not end the inquiry. First, the FCC's July 2015 ruling shows that the human intervention requirement is generally a case-by-case analysis. Second, some degree of human intervention will always be needed, as argued by Plaintiff at the hearing before the District Court, and as found by at least two district courts in *Sherman* and *Johnson*.

---

originate calls is a technical difference without a perceived distinction . . . ." *Satterfield*, 569 F.3d at 951.

Plaintiff thoroughly explained in the Opening Brief that while the system is not alleged to be a predictive dialer, it, like a predictive dialer, is an ATDS. It is not helpful to Crunch to argue that the system does not send text messages to random or sequential numbers like a predictive dialer can do, for a predictive dialer can also call a lists of numbers (even a list of customer's numbers) and still be an ATDS, as explained above.

Crunch argues a "case-by-case" analysis called for by the FCC in the 2015 Ruling requires courts to consider how human intervention may come into play in all aspects of the dialing system, not just the dialing aspect. Answering Brief, P. 40. Crunch contends that there is human intervention in: logging onto the platform, creating the content of the messages, selecting the recipients, and scheduling the date and time of the text messages (Answering Brief, p. 40). But such actions prior to the actual sending of the text messages is almost always going to be required. The FCC's 2003 ruling should be read in connection with the 2015 ruling in terms of what part of the dialing equipment is modified by the phrase "human intervention." Numerous courts have applied such language to the dialing aspect of the equipment rather than action that may take place beforehand (such as creation of the content of the text message), as explained in the Opening Brief.

Assuming, *arguendo*, that Crunch is correct, the "human intervention" Crunch refers to is insufficient to find the Textmunication system is not an ATDS.

21

The potential presence of some human intervention in the sending of the text message does not support summary judgment in Crunch's favor. While the FCC's 2003 ruling referred to dialing "without human intervention," the more recent 2015 ruling makes is abundantly clear that the presence of some human intervention does not prevent a finding that the equipment is an ATDS.

It is not true that a focus on the dialing aspect would obviate a need to evaluate human intervention on a case-by-case basis for all text messaging platforms and devices. Equipment is an ATDS if it either stores telephone numbers and dials those numbers (or has the capacity to do so), or produces random or sequential numbers and calls those numbers (or has the capacity to do so), *unless* the "human intervention" analysis disqualifies the equipment. However, the human intervention analysis would disqualify such equipment only in extreme cases, such as use of a rotary-dial phone or speed dialing, which are examples from the FCC of what is not an ATDS.

Even if that were not the case, in 2015, the FCC gave an example of a rotary-dial phone not being an ATDS.[9] The FCC apparently believed that connecting a rotary-dial phone to other systems or components of systems to make automated calls would be too attenuated to be an ATDS. For example, a text

---

[9] Speed dialing is covered. 2015 FCC LEXIS 1586, *32.

messaging system could be designed to only send a text message in response to a text message from a consumer, or it could be designed to only send a text messages at a pre-designated date and time, or it could be designed to only send a text message one at a time based on the pressing of a button each time. In each instance, if a web-based system is not involved (which is not the case here), a case-by-case analysis may be needed to determine whether a text message is sent with human intervention and how much human intervention is required.

Whether there is sufficient human intervention for the system not to be an ATDS is a jury question supporting denial of Crunch's motion for summary judgment. As in *Satterfield*, where this Court found a question of fact remained regarding the alleged use of an ATDS, a jury should decide here whether the system has the requisite capacity, especially in light of Mr. Hansen's expert testimony. In a similar case, the *Sherman* Court held, "there are genuine issues of fact as to whether the PC2SMS system is an ATDS," as "[a] reasonable jury could conclude that the Welcome text is produced and sent by an ATDS as the term is defined in the TCPA." *Sherman*, 2015 U.S. Dist. LEXIS 167177 at *15. *See also McGowan,* 2015 U.S. Dist. LEXIS 129610 at *19 (finding genuine issue of fact in dispute); and *Keim*, 2015 U.S. Dist. LEXIS 159070 at *22 (same).

Lastly, any but-for test advocated by Crunch is inappropriate. The court in *Sherman* ruled that a "but-for" test is "inconsistent with the July 2015 FCC

23

instruction to apply a case-by-case analysis to how the human intervention element applies to a particular type of equipment." *Sherman*, 2015 U.S. Dist. LEXIS 167177 at *14-15. The *Sherman* Court followed a similar ruling in *Johnson*, where the court stated, "[a] person will always be a but-for cause of any machine's action, and therefore, I conclude that the FCC's 'human intervention' gloss on the statute requires more than but-for causation." *Johnson v. Yahoo*!, 2014 U.S. Dist. LEXIS 171325, *17 (N.D. Ill. Dec. 11, 2014).

## VI.  CRUNCH'S CASES ARE DISTINGUISHABLE

*Luna*, *McKenna* and *Derby* are all from the Northern District of California and their holdings should not be followed. In *Keim*, the court "decline[d] to follow these cases [*Derby*, *Luna*, *McKenna*, and *Smith*] because they all impose a *requirement* that an autodialer have the capacity to dial numbers without human intervention—contrary to the FCC's 2015 Order." *Keim*, 2015 U.S. Dist. LEXIS 159070 at *15. This is because "equipment may be an autodialer despite the fact that it does not have the capacity to dial numbers without human intervention, but this lack of capacity may defeat a TCPA claim 'based on how the equipment functions and depends on human intervention.'" *Id*. at *12 (citations omitted). The *Sherman* case and decisions relied upon by Marks in the Opening Brief should be followed here as they are more in line with the FCC's 2015 ruling and also the FCC's focus on automated dialing in terms of an ATDS. Again, Crunch's

24

construction of an ATDS would mean that even a predictive dialer is not an ATDS, which is contrary to Ninth Circuit case law and the FCC's prior rulings.

While the Third Circuit in *Dominguez* interpreted an ATDS differently than Marks, it did so in a manner that improperly avoided the Hobbs Act's jurisdiction bar when rejecting the plaintiff argument that the FCC has interpreted the autodialer definition to read out the "random or sequential number generator," *Dominguez*, 2015 U.S. App. LEXIS 18460 at *8, which decision basically ignored the "human intervention" language in the 2015 Ruling. The FCC did not read out of the statute one of the means of showing an ATDS (i.e., by generating and dialing random or sequential numbers; opposed to storing and automatically dialing numbers), but the FCC did expand upon the meaning of an ATDS in finding the predictive dialers are an ATDS. Looking at the straight statutory text of the TCPA, a predictive dialer would not necessarily fall under the definition in § 227(a)(1), yet both the FCC and this Court in *Meyer* agreed that predictive dialers are an ATDS. Thus, the approach offered by Marks is more persuasive and complies with the Hobbs Act and binding precedent.

//

//

25

## VII. THE TEXTMUNICATION SYSTEM HAS AT LEAST THE POTENTIAL CAPACITY TO GENERATE AND DIAL RANDOM OR SEQUENTIAL NUMBERS

The 2015 Ruling made it abundantly clear that "capacity" under 48 U.S.C. § 227(a)(1) includes *potential* capacity. Also, "[t]he FCC stressed that Congress 'intended a broad definition of autodialer.'" *Keim,* 2015 U.S. Dist. LEXIS 159070 at (citation omitted). The web-based Textmunication system is based on software code that could potentially be modified to include a number generator and to dial random or sequential numbers.[10]

Mr. Hansen's testimony should be understood in the context in which it was given. His testimony that the system does not generate or call random or sequential numbers referred to its *present* capacity, not its *potential* capacity. SER 074:25-076:13; 087:25-089:20. It was not until after Mr. Hansen testified in 2014 that the FCC issued the 2015 ruling including potential capacity. Crunch misrepresents Mr. Hansen's testimony because Mr. Hansen did not testify that the system could never, based on modifications, perform such tasks; and, Mr. Hansen's testimony was limited to a discussion of the system's present capacity when speaking of what it did at the time.

---

[10] Crunch states "the ability to generate numbers randomly or sequentially was never built into the software" (Answering Brief, p. 7), but this does not mean it could not be added.

26

Mr. Hansen did explain that one could generally write code to add a feature to equipment that did not previously have such a feature. SER 088:16-089:20; 098:22-9; 135:7-10).  Tellingly, in 2013, the Textmunication system was modified to add a feature to allow importing of lists of telephone numbers into the database, E.R. 199, ¶ 9, showing that a feature could be (and in fact was) added (Opening Brief, pp. 4 and 52). Crunch admits there is evidence the system has been modified in the past. Answering Brief, p. 8, n. 7. According to Mr. Asefi, "we may have added additional features" since 2011. E.R. 009.

Plaintiff offered evidence and reasoned argument that the testimony of non-expert Mr. Asefi that the system could not be modified was equivocal and self-serving, and does not support summary judgment in favor of Crunch. Opening Brief, p. 5.  It strains logic for the deponent, who is not the software designer but rather the CEO, to opine that it is not possible[11] to modify the web-based platform's software to send a text message to every fifth number in the list. Moreover, on summary judgment, the facts and all reasonable inferences must be made in favor of the non-moving party, i.e. Mr. Marks.

Crunch believes the text messaging system is not an ATDS, but it is certainly far more advanced that a rotary-dial telephone that the FCC has deemed

---

[11] E.R. (Mr. Asefi testified, "[i]t's not possible because I have not thought about it.").

is not an ATDS. The system is much like a conventional commercial dialer that is used to make calls or send text messages en masse by other businesses, but is instead web-based, which does not change the analysis, especially in light of the FCC's July 2015 ruling. The focus is on the equipment's capacity, not its present functionality, which could be changed anytime Textmunication wanted to make changes to suit it needs or the desires of its clients. Thus, even if the system is not currently configured or designed to generate and dial random or sequential numbers, it could be modified to do so.

The non-expert testimony from Mr. Asefi is self-interested, illogical, and also equivocal as to the *capacity* of the text messaging system. An expert is needed to understand the system's capacity. SER 141:3-11. Mr. Asefi is *not* the software designer but rather Textmunication's CEO. E.R. 185; E.R. 076, n. 17. It is therefore curious that Farad Niftaley (the software engineer, *id*.; E.R. 096-97) was not designated by Crunch as the representative on the ATDS issue. It also strains logic to believe that the web-based text messaging platform's code could not be modified to include a random or sequential number generator, especially when internet-to-phone messaging system are an ATDS.

In *Sherman*, the plaintiff "point[ed] to the testimony of Yahoo's representative who testified that it could, if it wanted to, dial all of the telephone numbers in its database with a notification text message by writing new software

code instructing the system to do so, thereby demonstrating the capacity to dial telephone numbers sequentially from a list of telephone numbers." *Sherman*, 997 F. Supp. 2d at 1136. Mr. Asefi's testimony that it is not possible to modify the platform is not credible, for it only makes sense that new software code could be written to add number generation (Textmunication even has a "to-do" or "wish" list of features it would like to add, E.R. 127:21-23; 128:14-19, such as choosing a winner <u>at random</u> (*id*. at 129:6-22)), which credibility determination should be made by a jury. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (U.S. 1986) ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment").

## VIII.  CRUNCH'S DISCUSSION OF CONSENT IS IRRELEVANT

Crunch inappropriately discusses "consent" (a defense, 27 F.C.C.R. at 1844), which was not at issue in the summary judgment motion. Although not pertinent here, it seems Crunch merely presumed it had consent to send marketing text messages to Plaintiff.  Also, there is no evidence at all in the record that Plaintiff "opted in" to receive text messages or invited a text message (Answering Brief, p. 5) or filled out an online form (*id*. at p. 6).  It is also irrelevant whether Crunch is contractually prohibited from sending people text messages without

consent. Lastly, the first text message received merely and vaguely stated at the end "reply S" (E.R. 258) not "reply stop to St" (E.R. 45).

## IX. CONCLUSION

In sum, the District Court's summary judgment order should be reversed, with a finding that the Textmunication system is either an ATDS or that it is a jury question.

Respectfully Submitted,

Dated: January 12, 2016      **KAZEROUNI LAW GROUP, APC**

BY:  /s/ ABBAS KAZEROUNIAN
         ABBAS KAZEROUNIAN, ESQ.
         *ATTORNEYS FOR APPELLANT*

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108-3551
Telephone: (619) 233-7770
Facsimile: (619) 297-1022
*Attorneys for Appellant*

**CERTIFICATE OF COMPLIANCE PURSUANT TO**
**FED. R. APP. 32(a)(7)(C) AND CIRCUIT RULE 32-1**

I certify pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1 that the attached Reply Brief of Appellant complies with the type-volume imitation of Fed. R. App. P. 32(a)(5) and (6) as it is proportionally spaced, has a typeface of 14 point Times New Roman font, and contains 6,977 words, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated: January 12, 2016        **KAZEROUNI LAW GROUP, APC**

BY:   /S/ ABBAS KAZEROUNIAN
ABBAS KAZEROUNIAN, ESQ.
ATTORNEYS FOR PLAINTIFF-
APPELLANT

(I)

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **REPLY BRIEF FOR PLAINTIFF-APPELLANT** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on January 12, 2016. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: January 12, 2016        **KAZEROUNI LAW GROUP, APC**

BY:  /s/ ABBAS KAZEROUNIAN
       ABBAS KAZEROUNIAN, ESQ.
       ATTORNEYS FOR PLAINTIFF-
       APPELLANT